# EXHIBIT A

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER: 348491
NAME: Valter Malkhasyan (348491) | Erik Pogosyan (345650)
FIRM NAME: MALK & POGO LAW GROUP, LLP
STREET ADDRESS: 5320 Laurel Canyon Blvd
CITY: Valley Village STATE: CA ZIP CODE: 91607
TELEPHONE NO.: (818) 484-5204 FAX NO.: (818) 824-5144
EMAIL ADDRESS: valter@malkpogolaw.com
ATTORNEY FOR (*name*): Plaintiff Alex Kononenko and the Proposed Class

***FOR COURT USE ONLY***

**Electronically Filed by Superior Court of CA, County of Santa Clara, on 5/14/2026 11:18 AM Reviewed By: T. Flores Case #26CV493594 Envelope: 23726786**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, 95113
BRANCH NAME: Downtown Superior Court

CASE NAME:
Kononenko v. PepsiCo, Inc. et al.

## CIVIL CASE COVER SHEET

[X] **Unlimited** (Amount demanded exceeds $35,000)
[ ] **Limited** (Amount demanded is $35,000 or less)

**Complex Case Designation**
[ ] Counter [ ] Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 26CV493594
JUDGE:
DEPT.:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Asbestos**
[ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[X] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (*not specified above*) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (*not specified above*) (43)

2. Is this case complex under rule 3.400 of the California Rules of Court? [x] Yes [ ] No

If the case is complex, mark the factors requiring exceptional judicial management:

a. [ ] Large number of separately represented parties
b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. [x] Substantial amount of documentary evidence
d. [ ] Large number of witnesses
e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):*

a. [x] monetary
b. [x] nonmonetary; declaratory or injunctive relief
c. [x] punitive

4. Number of causes of action *(specify):* 7: UCL, FAL, CLRA, Breach Of Warranty, Unjust Enrichment, Intentional Misrepresentation,

5. Is this case a class action suit? [x] Yes [ ] No

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 14, 2026

Valter Malkhasyan

(TYPE OR PRINT NAME)

▶ [signature]

(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

## CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/ Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Asbestos**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Product Liability *(not asbestos or toxic/ environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collections Case–Seller Plaintiff
- Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord-tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition re Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Employment Development Department (EDD)**
- EDD Decision Review (48) *(if the case involves an Employment Development Department decision, check this item instead of Wrongful Termination or Other Employment)*

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Comprehensive Groundwater Adjudication (47)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister-State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only Injunctive Relief Only *(non-harassment)*
  - Mechanic's Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

E-FILED
5/14/2026 11:18 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
26CV493594
Reviewed By: T. Flores
Envelope: 23726786

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
PEPSICO, INC., New York corporation, STOKELY-VAN CAMP, INC., Illinois corporation, and DOES 1-20, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
ALEX KONONENKO, individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Downtown Superior Court
191 North First Street San Jose, CA 95113

CASE NUMBER:
*(Número del Caso):* 26CV493594

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Valter Malkhasyan | Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd., Valley Village, CA 91607 | (818) 484-5204

DATE: 5/14/2026 11:18 AM Clerk of Court Clerk, by T. Flores, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Defendants PepsiCo, Inc., Stokely-Van Camp, Inc.

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☐ by personal delivery on *(date)*:

**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
*erik@malkpogolaw.com*
5320 Laurel Canyon Blvd.,
Valley Village, CA 91607
Tel: (818) 484-5204
Fax: (818) 824-5144

*Counsel for Plaintiff and the Proposed Class*

E-FILED
5/14/2026 11:18 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
26CV493594
Reviewed By: T. Flores

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

**COUNTY OF SANTA CLARA**

ALEX KONONENKO, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

PEPSICO, INC., New York corporation, STOKELY-VAN CAMP, INC., Illinois corporation, and DOES 1-20, inclusive,

Defendants.

Case No. 26CV493594

**CLASS ACTION COMPLAINT**

1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.
2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.
3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. Seq*.
4. BREACH OF EXPRESS WARRANTY
5. RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT
6. INTENTIONAL MISREPRESENTATION
7. NEGLIGENT MISREPRESENTATION

**DEMAND FOR JURY TRIAL**

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Plaintiff Alex Kononenko ("**Plaintiff**"), individually and on behalf of all others similarly situated, bring this class action complaint against Defendants PepsiCo, Inc., Stokely-Van Camp, Inc. and Does 1 through 20, inclusive (collectively "**Defendants**") and alleges as follows:

## SUMMARY OF THE ACTION

1. This is a class action lawsuit brought on behalf of all purchasers of Defendants' Gatorade branded "**no artificial flavors**, sweeteners, or colors from artificial sources" and "**naturally flavored with other natural flavors**" beverage products (the **"Products"**), sold online and at retail locations throughout California and the United States.

2. Defendants falsely and deceptively advertise the Products as having "no artificial flavors" and being "naturally flavored with other natural flavors" ("**No Artificial Flavors Representations**"). However, contrary to the Products' No Artificial Flavors Representations, as explained in detail below, the Products contain manufactured citric acid — a well-documented, FDA defined artificial flavoring ingredient.

3. Through falsely, misleadingly, and deceptively labeling the Products, Defendants seek to take advantage of consumers' desire for truly premium products that are free from artificial flavoring agents. Yet, Defendants do so at the expense of unwitting consumers, as well as Defendants' lawfully acting competitors, over whom Defendants maintain an unfair competitive advantage.

4. Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined infra), for dual primary objectives: ***One***, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for Products that should, but fail to, comport with the No Artificial Flavors Representations (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. ***Two***, Plaintiff seeks, on his individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendants' unlawful manufacture, marketing, and sale of the Products with the No Artificial Flavors Representations to avoid or

mitigate the risk of deceiving the public into believing that the Products conform to the No Artificial Flavors Representations, by requiring Defendants to change their business practices, which may include one or more of the following: removal or modification of the No Artificial Flavors Representations from the Products' labels, removal or modification of the No Artificial Flavors Representations from the Products' advertising, modification of the Products' formulation be it a change in ingredients or its sourcing and manufacturing processes, and/or discontinuance of the Products' manufacture, marketing, and/or sale.

5. A true and correct copy of the Product label is pictured below.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**<u>Gatorade Lower Sugar Electrolyte Sports Drink</u>**[1,2]




[1] The Gatorade Lower Sugar Electrolyte Sports Drink includes but is not limited to the following flavors: (a) Rain Berry; (b) Fruit Punch; (c) Glacier Cherry; (d) Lemonade.

[2] The Gatorade Lower Sugar Electrolyte Sports Drink includes but is not limited to the following sizes: (a) 12 fl oz; (b) 20 fl oz; and (c) 28 fl oz.

**Gatorade GZERO Sports Drink Mix**[3]




[3] The Gatorade GZERO Sports Drink Mix product includes but is not limited to the following flavors: (a) Glacier Freeze; (b) Fruit Punch; (c) Glacier Cherry; (d) Grape; (e) Lemon Lime; (f) Orange; and (g) Strawberry Ice.

**Gatorade Gatorlyte Rapid Rehydration Electrolyte Beverage** [4, 5]




[4] The Gatorade Gatorlyte Rapid Rehydration Electrolyte Beverage product includes but is not limited to the following flavors: (a) Cherry Lime; (b) Lime Cucumber; (c) Mixed Berry; (d) Orange; (e) Strawberry Kiwi; (f) Watermelon.

[5] The Gatorade Gatorlyte Rapid Rehydration Electrolyte Beverage product is also available for purchase in the following pack size: (a) Cherry Lime, 1 Pack and 12 Pack; (b) Lime Cucumber, 1 Pack and 12 Pack; (c) Mixed Berry, 1 Pack and 12 Pack; (d) Orange, 1 Pack and 12 Pack; (e) Strawberry Kiwi, 1 Pack and 12 Pack; (f) Watermelon, 1 Pack and 12 Pack.



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**Gatorade G Zero Sports Drink** [6,7]




[6] The Gatorade G Zero Sports Drink product includes but is not limited to the following types or variations: (a) Glacier Cherry; (b) Orange; (c) Lemon Lime; (d) Grape; and (e) Watermelon Splash.

[7] The Gatorade G Zero Sports Drink product is also available for purchase in the following pack size: (a) Glacier Cherry, 1 pack (20 fl oz bottle and 28 fl oz), 8 pack (20 fl oz bottles) and 12 pack (12 fl oz bottles); (b) Orange, 1 pack (20 fl oz bottle and 28 fl oz), 8 pack (20 fl oz bottles) and 12 pack (12 fl oz bottles); (c) Lemon Lime, 1 pack (20 fl oz bottle and 28 fl oz), 8 pack (20 fl oz bottles) and 12 pack (12 fl oz bottles); (d) Grape, 1 pack (20 fl oz bottle and 28 fl oz), 8 pack (20 fl oz bottles) and 12 pack (12 fl oz bottles); (e) Watermelon Splash, 1 pack (20 fl oz bottle and 28 fl oz), 8 pack (20 fl oz bottles) and 12 pack (12 fl oz bottles).



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**Gatorade Fit 100% DV Vitamins Sports Drink**[8]




[8] The Gatorade Fit 100% DV Vitamins Sports Drink product is also available for purchase in the following flavors: (a) Tropical Mango; (b) Blackberry Raspberry; (c) Citrus Berry; and (d) Watermelon Strawberry.



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**Gatorade Zero Tablets**[9]




[9] The Gatorade Zero Tablets product includes but is not limited to the following types or variations: (a) Glacier Cherry, (b) Lemon-Lime, (c) Watermelon.

**Gatorade Gx Pod**[10]




[10] The Gatorade Zero Tablets product includes but is not limited to the following types or variations: (a) Fruit Punch, (b) Grape, (c) Kiwi Strawberry, (d) Glacier Cherry, (e) Strawberry Raspberry.



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**<u>Gatorade Electrolytes Propel Tablets</u>**[11]




[11] The Gatorade Zero Tablets product includes but is not limited to the following types or variations: (a) Berry, (b) Grape, (c) Kiwi Strawberry.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**Gatorlyte Electrolyte Beverage Powder**[12]




[12] The Gatorade Zero Tablets product includes but is not limited to the following types or variations: (a) Cherry Lime, (b) Orange, (c) Watermelon.

**Gatorade Electrolytes Propel Powder**[13]




[13] The Gatorade Zero Tablets product includes but is not limited to the following types or variations: (a) Berry, (b) Grape, (c) Kiwi Strawberry, (d) Lemon.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**Gatorade Hydration Booster Powder**[14]




[14] The Gatorade Zero Tablets product includes but is not limited to the following types or variations: (a) Citrus Berry, (b) Strawberry Watermelon, (c) Tropical Mango.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

6. Consumers are deceived by Defendants' labeling and advertising of the Products as having "no artificial flavors []" and being "naturally flavored with other natural flavors" believing that they are purchasing products without any artificial flavors. Consumers rely on Defendants' labeling and advertising of the Products to be truthful and would not know that the Products actually contain a well-documented artificial flavoring ingredient.

7. Reasonable consumers such as Plaintiff do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendants' front label No Artificial Flavors Representations.

8. Defendants know that consumers are willing to pay more for natural, healthy products without any artificial flavors, and advertise the Products with the intention that consumers rely on the representation made on the front of the Products' packaging.

9. By falsely labeling the Products as having "no artificial flavors []" and being "naturally flavored with other natural flavors," Defendants have profited from consumers' preference for products that are made with exclusively natural flavors.

## PARTIES

10. **Plaintiff:** Plaintiff is, and at all times relevant hereto was, a citizen of California. Plaintiff has purchased various flavors of the Products and most recently purchased the Gatorade Lower Sugar "No Artificial Flavors" Glacier Cherry Sports Drink from a Safeway location in Santa Clara, CA in or around May of 2026. In making his purchases, Plaintiff relied upon Defendants' labeling and advertising claims, namely, the No Artificial Flavors Representations clearly printed on the front label of the Products. These claims were prepared and approved by Defendants and their agents and disseminated statewide and nationwide, to encourage consumers to purchase the Products. If Plaintiff had known that the Products contained artificial flavoring ingredients, then Plaintiff would not have purchased the Products, or he would have purchased it at a substantially lower price.

11. **Plaintiff's Future Harm:** Plaintiff would like to purchase the Products again only if he can be sure that Defendants are compliant with the state consumer protection laws. Plaintiff continues to see Defendants' Products in stores available for purchase, and desires to purchase them

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

again if the representation regarding the No Artificial Flavors Representations were in fact true. Since Plaintiff would like to purchase the Products again to obtain a product that, as advertised, is truly free from artificial and unnatural flavoring ingredients, Plaintiff would purchase it again in the future—despite the fact that it was once marred by false advertising or labeling—as Plaintiff would reasonably, but incorrectly, assume the Products were improved (no longer contain flavors). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of  sport products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately differentiate between ingredients that are "artificial flavors" or not. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendants fixed the formulation of the Products such that Plaintiff may buy it again, believing it to no longer be falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the No Artificial Flavors Representations. Based on information and belief, the labeling of the Products purchased by Plaintiff is typical of the labeling of the Products purchased by members of the class.

12. **Defendants**. Defendant PepsiCo, Inc. is a New York corporation that maintains its principal place of business at 700 Anderson Hill Road Purchase, NY 10577. Defendant Stokely-Van Camp, Inc. is a subsidiary of PepsiCo, Inc. and is an Illinois corporation that maintains its principal place of business at 433 W. Van Buren Street, Suite 3N Chicago, IL 60607. At all times during the class period, Defendants were the manufacturers, distributors, marketers, and sellers of the Products. Defendants directly and through their agents, have substantial contacts with and receive substantial benefits and income from and through the State of California.

13. The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 20 inclusive are presently unknown to Plaintiff who therefore sues these individuals and/or entities by fictitious names. Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and based thereon alleges that DOES 1 through 20 were authorized to do and did business in Santa Clara County. Plaintiff is further informed and believe and based thereon allege that DOES 1 through 20

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and consequences hereinafter set forth below.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, § 10, because this case is a cause not given by statute to other trial courts.

15. Plaintiff has standing to bring this action pursuant to Business & Professions Code § 17200, *et seq*.

16. Venue is proper in this Court because the Plaintiff purchased the Products in Santa Clara County. Defendants receive substantial compensation from sales in Santa Clara County, and Defendants made numerous misrepresentations which had a substantial effect in Santa Clara County, including, but not limited to, label, point of purchase displays, and internet advertisements.

17. Upon information and belief, said misrepresentations originated and/or emanated from the State of California.

18. Defendants and other out-of-state participants can be brought before this Court pursuant to the provisions of Code of Civil Procedure § 395.5.

19. Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to do and are doing business in Santa Clara, California.

## FACTUAL ALLEGATIONS

### A. Citric Acid

#### a. Citric Acid as a Flavoring Agent

20. Defendants falsely, deceptively, and misleadingly market the Products as having "no artificial flavors" despite containing citric acid, which is utilized in food products as a flavorant, providing a tart taste to food, supplements and beverages. (*see Figure 1*).[15,16]

---

[15] Iliana E. Sweis and Brian C. Cressey, Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports, 5 Toxicology Reports 808-812 (Aug. 9, 2018).

[16] Yadav Poonam, et al., *Organic Acids: microbial sources, production, and applications*, Functional Foods and Nutraceuticals in Metabolic and Non-Communicable Diseases (2022),

*Figure 1 - FDA-Recognized Technical Effect of Citric Acid* [17]

U.S. FOOD & DRUG ADMINISTRATION

## Substances Added to Food *(formerly EAFUS)*

FDA Home › Ingredients and Packaging › Food Ingredient and Packaging Inventories › Substances Added to Food *(formerly EAFUS)* › CITRIC ACID

### CITRIC ACID

| | |
|---|---|
| **CAS Reg. No. (or other ID)*:** | 77-92-9 |
| **Substance*:** | CITRIC ACID |
| **Other Names:** | ♦ CITRIC ACID<br>♦ CITRIC ACID, ANHYDROUS<br>♦ 2-HYDROXY-1,2,3-PROPANETRICARBOXYLIC ACID<br>♦ BETA-HYDROXYTRICARBALLYLIC ACID<br>♦ 1,2,3-PROPANETRICARBOXYLIC ACID, 2-HYDROXY-<br>♦ ACIDE CITRIQUE |
| **Used for*† (Technical Effect):** | ANTIMICROBIAL AGENT,<br>ANTIOXIDANT,<br>ENZYME,<br>FLAVOR ENHANCER,<br>FLAVORING AGENT OR ADJUVANT,<br>LEAVENING AGENT,<br>PH CONTROL AGENT,<br>SEQUESTRANT,<br>SOLVENT OR VEHICLE,<br>SURFACE-ACTIVE AGENT |

21. The USDA identifies flavoring as a recognized functional use of citric acid.[18]

22. Citric acid acts as a flavoring agent in the Products regardless of the subjective purpose or intent for why Defendant added citric acid to the Products because it inherently imparts acidity and thus modifies the flavor profile of the final product — i.e. it is, by its chemical nature and recognized use, a flavoring or acidulent additive.

///

///

///

https://doi.org/10.1016/B978-0-12-819815-5.00053-7; see also Anna Hezel, *For the Snackiest Popcorn, You Need a Pinch of This*, (Feb. 7, 2023) https://www.epicurious.com/ingredients/how-to-use-citric-acid-on-popcorn?utm.

[17] FDA Substances Added to Food (formerly EAFUS) CITRIC ACID 77-92-9 // URL: https://www.hfpappexternal.fda.gov/scripts/fdcc/index.cfm?set=FoodSubstances&id=CITRICACID

[18] U.S. Dep't of Agric., Agric. Mktg. Servs., Citric Acid: Technical Report 6–7 (2015), available at https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf#:~:text=Citric%20acid%20also%20inhibits%20color,flavor%20deterioration%20in%20frozen%20fruit.&text=food%20products%20and%20artificial%20flavors,soft%20drink%20tablets%20and%20powders

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**b. <u>Citric Acid as an Artificial Ingredient</u>**

23. Defendants use a synthetic form of citric acid that is derived from heavy chemical processing.[19] The citric acid used in the Products is commercially produced and is manufactured using a type of black mold called *Aspergillus niger*.[20] Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendants use in the Products from *aspergillus niger* fermentation liquor. *See* 21 C.F.R § 173.280. The citric acid that Defendants use in the Products is produced through chemical solvent extraction and contains residues of those chemical solvents.

24. The FDA explains that the "Solvent extraction process for citric acid" is accomplished via "recovery of citric acid from conventional Aspergillus niger fermentation liquor may be safely used to produce food-grade citric acid in accordance with the following conditions: (a) The solvent used in the process consists of a mixture of n-octyl alcohol meeting the requirements of § 172.864 of this chapter, synthetic isoparaffinic petroleum hydrocarbons meeting the requirements of § 172.882 of this chapter, and tridodecyl amine." 12 C.F.R. § 173.280 (emphasis added). Chemical solvents such as n-octyl alcohol and synthetic isoparaffinic petroleum hydrocarbons are used to extract the citric acid that Defendant uses in the Product from aspergillus niger fermentation liquor. See 21 C.F.R § 173.280. The citric acid that Defendant uses in the Product is produced through chemical solvent extraction and contains residues of those chemical solvents.

25. An article published in the *Toxicology Reports Journal* explains that citric acid produced through aspergillus niger fermentation is artificial: Citric acid naturally exists in fruits and vegetables. However, it is not the naturally occurring citric acid, but the manufactured citric acid (MCA) that is used extensively as a food additive. Approximately 99% of the world's production of MCA is carried out using the fungus *Aspergillus niger* since 1919. *Aspergilus niger*

[19] A. Hesham, Y. Mostafa & L. Al-Sharqi, Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast Isolates, 48 MYCOBIOLOGY 122, 123 (2020), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7178817/ (emphasis added).

[20] *Id*; Pau Loke Show,et al., Overview of citric acid production from Aspergillus niger, FRONTIERS IN LIFE SCIENCE, 8:3, 271-283 (2015), available athttps://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653

is a known allergen.[21] Because extracting citric acid directly from natural sources is economically impractical at commercial scale, manufacturers overwhelmingly rely on this industrial fermentation process, resulting in the widespread use of manufactured citric acid.

26. The EPA provides the following schematic of the manufacturing process for citric acid, which includes the use of synthetic solvents like sulfuric acid:[22]




27. The Food and Drug Administration ("FDA") has also sent warning letters to companies stating that certain products labeled as "natural" are misbranded because they contain ***artificial*** citric acid as an ingredient. For example, on August 29, 2001, the FDA sent Hirzel Canning Company ("Hirzel") a warning letter regarding its canned tomato products. With respect to Hirzel's Chopped Tomatoes Onions & Garlic and Chopped Mexican Tomatoes & Jalapenos, the FDA stated that these products could not bear the "All Natural" claim on the label because the products contained a synthetic ingredient, citric acid.[23]

28. Similarly, on August 16, 2001, the FDA sent Oak Tree Dairy Farm, Inc. ("Oak Tree") a warning letter regarding its "Oaktree Real Brewed Iced Tea," "Oaktree Fruit Punch," and "Oaktree All Natural Lemonade" products. With respect to Oak Tree's "Oaktree Real Brewed Iced Tea," the FDA stated that this product could not bear the "100% Natural" and "All Natural" claims on the label because the product contained a synthetic ingredient, citric acid.

[21] Iliana E. Sweis, et al., *Potential role of the common food additive manufactured citric acid in eliciting significant inflammatory reactions contributing to serious disease states: A series of four case reports*, TOXICOLOGY REP. 5:808-812 (2018), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6097542/Case 2:24-cv-03721-MWF-AJR
[22] https://www.epa.gov/system/files/documents/2023-03/Citric+Acid+Supply+Chain+Profile.pdf.
[23] *Id.*

29. Below are images of the chemical process used to create citric acid for use in food – a process that is visibly artificial:









30. Consumption of manufactured citric acid has been associated with adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath.[24] The *Toxicology Reports Journal* article explains that "the potential presence of impurities or fragments from the Aspergillus niger in [manufactured citric acid] is a significant difference that may trigger deleterious effects when ingested."[25]

[24] *Id.*
[25] *Id.*

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

31. Several courts—including the Ninth Circuit—have found it plausible that citric acid produced from *Aspergillus niger* fermentation is not natural and may be considered an artificial flavor. *See, e.g., Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533 (9th Cir. 2016) (reversing a grant of summary judgment and holding that evidence could "allow a trier of fact to find that the synthetic citric and ascorbic acids in Dole's products were not 'natural.'"); *Mason v. Reed's Inc.,* 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (noting that FDA warning letters "suggest that citric acid, as produced by Aspergillus Niger, makes an 'All-Natural' label misleading."); *Gabriele v. ConAgra Foods, Inc.*, 2015 WL 3904386, at *4 (W.D. Ark. June 25, 2015) (accepting as true the plaintiff's allegations "that the products contain artificially derived citric acid or calcium chloride, in contravention of federal regulations.").

32. The Ninth Circuit Court of Appeals, emphasizing the warning letters described above, has issued a pertinent decision as to whether citric acid can be considered an artificial flavor. In *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531 (2016) the Ninth Circuit reversed a summary judgment order in favor of a defendant holding there was a genuine dispute as to whether citric acid is an artificial ingredient and whether the defendant's "All Natural Fruit" label was likely to deceive a reasonable consumer. The Ninth Circuit stated: Brazil cited more recent FDA warning letters to food sellers. These sellers had described their products as '100% Natural' or 'All Natural,' and the FDA accused those descriptions of being deceptive because the products in question included synthetic citric acid, among other substances. Taken together, this evidence could allow a trier of fact to conclude that Dole's description of its products as 'All Natural Fruit' is misleading to a reasonable consumer. The evidence here—including the conflicting testimony of expert witnesses and Dole employees—could also allow a trier of fact to find that the synthetic citric and ascorbic acids in Dole's products were not 'natural.' Summary judgment was therefore granted in error. *Brazil*, 660 F. App'x at 533–34.

**B. <u>Defendants' Product Marketing Further Misleads Reasonable Consumers</u>**

33. Despite formulating its Products with artificial flavoring ingredient, Defendants methodically market these Products as having "no artificial flavors" and being "naturally flavored with other natural flavors" both on their own and other third-party retailer websites and social media

accounts, which further mislead consumers into believing the Products contain only natural flavors. See pictures from official websites and social media below:







Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607




No artificial flavors, sweeteners, or colors

- Walmart Grocery Pickup
- Food 4 Less
- Target Delivery
- Stater Bros

See more

Top



**Propel Tablets** Berry (8 tubes)




## Propel Fitness Water has electrolytes, antioxidants C and E , and B vitamins with zero sugar and low calories

- Contains Gatorade Electrolytes to help replace what you lose in sweat
- Excellent source of vitamins B3, B5, B6, B12 & E, good source of antioxidant vitamin C
- Zero sugar and zero calories
- Made with no artificial flavors or added colors
- Compact resealable tube to help keep you hydrated on-the-go



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607


Pickup
Panorama City By The Mall Vannuys Blv...
Search everything at Walmart online and in store
Reorder
My Items
Sign In
Account
Departments
Services
Rollbacks & More
Mother's Day
Get it Fast
Pharmacy
New Arrivals
Spring Home
Patio & Garden
Meals Made Easy
My Items
Only at Walmart
Credit Card
Walmart+
NO ARTIFICIAL
FLAVORS, SWEETENERS, OR COLORS
Sports Drink, 28 fl oz, 75% Less Sugar, Hydration
Flavor: Rain Berry
Fruit Punch $1.88 6.7 ¢/fl oz
Glacier Cherry Other options
Lemonade Other options
Rain Berry $1.88 6.7 ¢/fl oz
Ingredients
Key item features
Includes 1 (28 fl oz) bottle(s) of Gatorade Lower Sugar Electrolyte Sports Drink made with 75% lower sugar than regular Gatorade, Rain Berry flavor
than Gatorade Thirst Quencher and contains no artificial flavors, sweeteners or colors (*Per 12 fl. oz serving: This product 5g sugar
Electrolyte Drink for Hydration: Scientifically-formulated with Gatorade's #1 proven electrolyte blend to hydrate better than water, providing sodium (with chloride) and potassium to help replace key electrolytes lost in sweat
Gatorade with No Artificial Colors: Gatorade Lower Sugar delivers bold colors that Gatorade is known for without using artificial color sources
$1.88 6.7 ¢/fl oz
Price when purchased online
Earn up to 5% cash back with OnePay CashRewards. Learn how
Free 90-day returns
2 added
Subscribe
One-time purchase $1.88
How you'll get this item:
I want delivery savings with Walmart+
Try 30 days of Free Shipping with Walmart+! Choose plan at checkout.
Shipping Not available
Pickup As soon as 3pm today
Delivery As soon as 1 hour
Panorama City By The Mall Vannuys Blvd Store Change
Pickup as soon as 3pm.
Aisle A30


amazon
Delivering to Glendale 91206
Update location
Search Amazon
GATORLYTE
RAPID REHYDRATION
REHIDRATACIÓN RÁPIDA
ELECTROLYTE BEVERAGE
SCIENTIFICALLY FORMULATED FOR RAPID REHYDRATION
SODIUM 490 MG
POTASSIUM 350 MG
CHLORIDE 1,040 MG
MAGNESIUM 105 MG
CALCIUM 120 MG
LOWER SUGAR
60% lower sugar than leading sports drink, gatorlyte contains 12g total sugars per 20 fl oz serving, the leading sports drink contains 34g total sugars per 20 fl oz serving.
NO ARTIFICIAL SWEETENERS OR FLAVORS
Q What is Gatorlyte?
Q How is Gatorlyte different from other Gatorade products?
Q Who should drink Gatorlyte?
Q What are the benefits of Gatorlyte?
A Gatorlyte provides athletes with rapid rehydration and conta... the following: 5 Electrolyte Blend, Lower Sugar, & No Artificial Sweeteners or Flavors. The key electrolyte in Gatorlyte, sodium, helps replace what is lost in sweat.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607









34. In fact, some of the Products, specifically the (1) Gatorade Propel Energy Boost Powder; (2) Gatorade Zero Powder; (3) Gatorade Zero Tablets; and (4) Gatorade Propel Tablets, contain more of the citric acid ingredient than any other ingredients, listed as first most predominant ingredient by weight.




### C. Defendants Mislead Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to their Detriment

35. **Materiality.** The No Artificial Flavors Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products. Specifically, the composition of the Products containing "no artificial flavors, sweeteners, or colors from artificial sources" and being "naturally flavored with other natural flavors"—is important to consumers and motivates them to buy the Products.

36. **Reliance**. The Class, including Plaintiff, reasonably relied on the No Artificial Flavors Representations in deciding to purchase the Products.

37. **Consumers Lack Knowledge of Falsity.** Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' No Artificial Flavors Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendants and therefore have no personal knowledge of the

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

actual ingredients used to make the Products or how those ingredients are made, including whether artificial flavors are included. Additionally, average consumers do not have the specialized knowledge of a chemist or product-developer. Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures whether certain ingredients, are artificial flavors. Furthermore, reasonable consumers, like Plaintiff, do not ordinarily review information on the back or side panels of a consumer product's packaging, like the Products' packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at the side or back labels of consumer goods, such as ingredient lists, before they buy it.[26]

38. The average consumer spends generally not more than 13 seconds to make an in-store purchasing decision.[27] That decision is heavily based upon the product's front labeling because

---

[26] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A487F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6655A&originRegion=us-east-1&originCreation=20220720162546 (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed December 31, 2025) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

[27] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

consumers do not have time to review and read every portion of the label and inspect in detail the rear label which depicts in small print the ingredients.

39. **Defendants' Knowledge**. Defendants knew, or should have known, that the No Artificial Flavors Representations are false, misleading, deceptive, and unlawful, at the time that Defendants manufactured, marketed, advertised, labeled, and sold the Products using the No Artificial Flavors Representations to Plaintiff and the Class. Defendants intentionally and deliberately used No Artificial Flavors Representations, alongside its massive marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Products believing that the No Artificial Flavors Representations are true.

a. **Knowledge of Falsity.** Defendants marketed the Products with the No Artificial Flavors Representations, but Defendants opted to formulate and manufacture them in a manner that does not conform to this representation. Specifically, Defendants advertised and labeled the Products with the No Artificial Flavors Representations, but, instead of using only natural flavor ingredients, Defendants chose to make the Products with citric acid, a well-documented artificial flavoring ingredient.

b. **Knowledge of Reasonable Consumers' Perception.** Defendants knew, or should have known, that the No Artificial Flavors Representations would lead reasonable consumers into believing that the Products' flavors were natural—i.e., the Products do not contain artificial flavors. Not only have Defendants labeled the Products with the No Artificial Flavors Representations and executed a long-standing brand strategy and advertising campaign to identify the Products with the No Artificial Flavors Representations, but Defendants also have an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendants were statutorily obligated to consider whether the No Artificial Flavors Representations, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Products were made of only natural flavoring ingredients. Thus, Defendants either knew the No Artificial Flavors Representations were misleading before they marketed the Products to the Class, including Plaintiff, or Defendants would have known that it was deceptive had Defendants complied with its statutory obligations.

c. **Knowledge of Materiality.** Defendants knew or should have known that the No Artificial Flavors Representations are material to consumers. ***First***, manufacturers and marketers, like Defendants, generally reserve the front primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the

windown/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited 12/09/2025).

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

conspicuousness of the No Artificial Flavors Representations on the Products' labels demonstrates Defendants' awareness of its importance to consumers and Defendants' understanding that consumers prefer and are motivated to buy products that conform to the No Artificial Flavors Representations. ***Second***, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, the constant, unwavering use of the No Artificial Flavors Representations on the Products, advertisements, and throughout Defendants' marketing campaign, evidence Defendants' awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendants' intent to convince consumers that the Products conform to the No Artificial Flavors Representations and, ultimately, drive sales.

d. **Defendants Continued Deception, Despite Their Knowledge.** Defendants, as the manufacturers and marketers of the Products, had exclusive control over the No Artificial Flavors Representations' inclusion on the Products' labels, and advertisements—i.e., Defendants readily and easily could have stopped using the No Artificial Flavors Representations to sell the Products. However, despite Defendants' knowledge of the No Artificial Flavors Representations' falsity, and Defendants' knowledge that consumers reasonably rely on the No Artificial Flavors Representations in deciding to buy the Products, Defendants deliberately chose to market the Products with the No Artificial Flavors Representations thereby misleading consumers into buying or otherwise overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the No Artificial Flavors Representations misleads reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendants falsely advertised and warranted. Indeed, notwithstanding Plaintiff's demand to Defendants to stop misleading consumers with the No Artificial Flavors Representations, Defendants have continued to market the Products using the No Artificial Flavors Representations.

40. By letter dated September 29, 2025, Plaintiff advised Defendants of their false and misleading claims pursuant to California Civil Code Section 1782, subdivision (a) regarding Defendants' use of citric acid – an artificial flavoring ingredient. Plaintiff has provided Defendants with notice of their violations of the CLRA pursuant to Civil Code § 1782(a).

**D. <u>The Products Are Substantially Similar</u>**

41. As described supra, Plaintiff purchased the Gatorade Lower Sugar "No Artificial Flavors" Glacier Cherry Sports Drink. (the "Purchased Product"). The additional unpurchased products are substantially similar to the Purchased Product.

a. **Defendants.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by the Defendants.

b. **Brand.** All Products are sold under the Gatorade brand name.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

c. **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d. **Purpose**. All Products are intended for the primary purpose of consumption.

e. **False Advertising Claims.** All Products contain the same No Artificial Flavors Representations on the Products' labeling and packaging. In addition, all Products prominently display the No Artificial Flavors Representations on the front label in order to focus the consumer's attention on the No Artificial Flavors Representations.

f. **Key Ingredients.** All Products contain citric acid, an artificial flavoring ingredient.

g. **Misleading Effect.** The misleading effect of the No Artificial Flavors Representations on consumers are the same for all Products—consumers are tricked into buying or otherwise over-paying a premium for Products that are composed of no artificial flavors, but they receive Products that, contrary to the Products' labels, also contain citric acid, an artificial flavoring ingredient.

**E. <u>No Adequate Remedy at Law</u>**

42. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendants' overall unfair marketing scheme to promote and brand the Products with the No Artificial Flavors Representations, across a multitude of media platforms, including the Products' labels, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the No Artificial Flavors Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

representation and omission made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendants continue to misrepresent the Products with the No Artificial Flavors Representations. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' No Artificial Flavors Representations are not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendants' future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Products' sales, and quantities of past/future Products' sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

## CLASS ALLEGATIONS

43. **Class Definition**. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All persons or entities that, within four years prior to the filing of this Complaint through present, purchased the Products in the United States, displaying the No Artificial Flavors Representations on the Products' labels, for purposes other than resale ("**Nationwide Class**"); and

> All persons or entities that, within four years prior to the filing of this Complaint through present, purchased the Products in California, displaying the No Artificial Flavors Representations on the Products' labels, for purposes other than resale ("**California Subclass**")

("Nationwide Class" and "California Subclass," collectively, "**Class**").

44. **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

45. **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

46. **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

47. **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a. Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b. Whether Defendants' conduct of advertising and selling the Products as being free from artificial flavors, creating the reasonable assumption that the Products do not contain any artificial flavoring ingredients, when the Products contain citric acid, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*.

c. Whether Defendants used deceptive representation in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d. Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e. Whether Defendants advertised the Products with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq*.;

f. Whether Defendants' labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

g. Whether Defendants knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h. Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.

i. Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.

j. Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k. Whether Plaintiff and the Class paid more money for the Products than they actually received;

l. How much more money Plaintiff and the Class paid for the Products than they actually received;

m. Whether Defendants' conduct constitutes breach of warranty;

n. Whether Plaintiff and the Class are entitled to injunctive relief; and

o. Whether Defendants were unjustly enriched by its unlawful conduct.



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

48. **Typicality**: Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

49. **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

50. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy its ill-gotten gains;

c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

51. **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

52. **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

53. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT ONE**

**Violation of California Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

**(*On Behalf of the California Subclass*)**

54. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

55. **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

56. **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

57. **False Advertising Claims.** Defendants, in their labeling and advertising of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the No Artificial Flavors Representations (i.e., that the Products contain no artificial flavors) — despite the fact the Products contain citric acid, a well-

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

documented artificial flavoring ingredient. Such claim and omission appear on the front labels of the Products, which are sold at retail stores, point-of-purchase displays, and online.

58. **Defendants' Deliberately False and Fraudulent Marketing Scheme.** Defendants do not have any reasonable basis for the claims about the Products made in Defendants' advertising and on Defendants' labeling because the Products contain citric acid, a well-documented artificial flavoring agent. Defendants knew and know that the Products contain citric acid, yet Defendants intentionally advertise and market the Products to cause reasonable consumers to believe that the Products are free from artificial flavors.

59. **False Advertising Claims Cause Purchase of Products.** Defendants' labeling and advertising of the Products led to, and continue to lead to, reasonable consumers, including Plaintiff, believing that the Products are free from artificial flavoring ingredients, to the exclusion of artificial flavors.

60. **Injury In Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendants' No Artificial Flavors Representation—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from Defendants.

61. **Conduct Violates the UCL.** Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

62. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendants failed to avail themselves of reasonably available, lawful alternatives to further its legitimate business interests.

63. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter its conduct or Defendants are otherwise ordered to do so.

64. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendants to disclose such misrepresentation, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentation.

65. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

66. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

**"Unfair" Prong**

67. **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

68. **Injury.** Defendants' actions of mislabeling the Products with the No Artificial Flavors Representations do not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendants' deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendants' deceptive labeling and advertising outweigh any benefits.

69. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the Defendants' conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

70. **No Utility.** Here, Defendants' conduct of labeling the Products as having "no artificial flavors, sweeteners, or colors from artificial sources" and being "naturally flavored with other

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

natural flavors"—when the Products contain citric acid, has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

71. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

72. **Unfair Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants knew or should have known of their unfair conduct. Defendants' misrepresentation constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

73. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the No Artificial Flavors Representations.

74. **Defendants' Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

75. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling the Products with the No Artificial Flavors Representations.

76. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that are supposedly free from artificial flavoring ingredient, but instead purchased Products that contain citric acid, a well-documented artificial flavoring agent. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**<u>"Fraudulent" Prong</u>**

77. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

78. **Fraudulent & Material No Artificial Flavors Representations.** Defendants used the No Artificial Flavors Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The No Artificial Flavors Representations are false, and Defendants knew or should have known of its falsity. The No Artificial Flavors Representations are likely to deceive consumers into purchasing the Products because it is material to the average, ordinary, and reasonable consumer.

79. **Fraudulent Business Practice.** As alleged herein, the misrepresentation by Defendants constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

80. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false No Artificial Flavors Representations to their detriment in that they purchased the Products.

81. **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the No Artificial Flavors Representations. Alternatively, they could have refrained from including citric acid as an ingredient within the Products.

82. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

83. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling the Products with the No Artificial Flavors Representations.

84. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that supposedly contained no artificial flavors, but instead purchased Products that contain citric acid, a well-documented artificial flavoring agent. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**"Unlawful" Prong**

85. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

86. **Violations of CLRA and FAL.** Defendants' labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

87. **Additional Violations.** Defendants' conduct in making the false representation described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendants' misrepresentation of material facts, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

88. **Violation of 21 CFR § 101.22(j).** Defendant further violates 21 C.F.R. § 101.22(j), which requires that any food containing an added chemical preservative bear a label declaration identifying both the common or usual name of the ingredient and a separate description of its preservative function, such as "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention." The Products contain citric acid, which is also a chemical preservative as defined by the FDA. However, Defendant fails to disclose citric acid's preservative function on the Products' labels.

89. **Unlawful Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendants knew or should have known of its unlawful conduct.

90. **Reasonably Available Alternatives.** Defendants had reasonably available alternatives to further their legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the No Artificial Flavors Representations and/or omitting the use of artificial flavoring ingredients within the Products.

91. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct.

92. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of false and deceptive advertising of the Products.

93. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were supposedly free from artificial flavors, but instead purchased Products that contain citric acid – an artificial flavoring ingredient. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**COUNT TWO**

**Violation of California False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

**(*On Behalf of the California Subclass*)**

94. **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

95. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

96. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq*., prohibits "unfair, deceptive, untrue or misleading advertising[.]"

97. **False & Material No Artificial Flavors Representations Disseminated to Public.** Defendants violated section 17500 when they advertised and marketed the Products through the unfair, deceptive, untrue, and misleading No Artificial Flavors Representations disseminated to the public through the Products' labeling, marketing, and advertising. This representation was false because the Products do not conform to it. The representation was material because it is likely to mislead a reasonable consumer into purchasing the Products.

98. **Knowledge.** In making and disseminating the representation alleged herein, Defendants knew or should have known that the representation was untrue or misleading, and acted in violation of § 17500.

99. **Intent to Sell.** Defendants' No Artificial Flavors Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

100. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct prevent ongoing and future harm that will result.

101. **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## COUNT THREE

**Violation of California Consumers Legal Remedies Act**

**Cal. Civ. Code §§ 1750, *et seq*.**

**(*On Behalf of the California Subclass*)**

102. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

103. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

104. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful.

105. **Goods/Services.** The Products are each a "good," as defined by the CLRA in California Civil Code §1761(a).

106. **Defendants.** Defendants are each a "person," as defined by the CLRA in California Civil Code §1761(c).

107. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

108. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

109. **Violations of the CLRA.** Defendants violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent No Artificial Flavors Representations.

1. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."
2. Section 1770(a)(7) by representing that the Products "[are] of a particular standard, quality, or grade . . . [when] [they are] of another."
3. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [them] as advertised."

110. **Knowledge.** Defendants' uniform and material representation regarding the Products were likely to deceive, and Defendants knew or should have known that their representation was untrue and misleading.

111. **Malicious.** Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

112. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and failed to



Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

113. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendants' violations of the CLRA because they relied on the No Artificial Flavors Representations in deciding to purchase the Products. The No Artificial Flavors Representations were a substantial factor. The No Artificial Flavors Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

114. **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or around September 29, 2025, Plaintiff's counsel, acting on behalf all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendants PepsiCo, Inc. and Stokely-Van Camp, Inc. at the following addresses:

4. 700 Anderson Hill Road Purchase, NY 10577
5. 433 W. Van Buren Street, Suite 3N Chicago, IL 60607
6. 330 N Brand Blvd, Suite 700 Glendale, CA 91203
7. 334 North Senate Ave. Indianapolis, IN 46204

115. **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

116. **Injunction.** Given that Defendants' conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendants' violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendants' false advertising campaign.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

Plaintiff has no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise requires Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products with the No Artificial Flavors Representations.

117. **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants. Accordingly, Plaintiff seeks an award of punitive damages against Defendants.

## COUNT FOUR

### Breach of Express Warranty

***(Individually and On Behalf of the California Subclass)***

118. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

119. **Express Warranty**. Defendants expressly warrant that the Products do not contain any artificial flavors, as set forth above. Defendants' claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendants' claims.

120. All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

121. Defendants breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the advertising and label claims.

122. As a result of Defendants' breach of contract, Plaintiff and the Class have been damaged in the amount to be determined at trial.

**COUNT FIVE**

**Unjust Enrichment/Restitution**

**(*On Behalf of the Nationwide Class and California Subclass*)**

123. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

124. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

125. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

126. **Defendants' Knowledge of Conferred Benefit.** Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

127. **Defendants' Unjust Receipt Through Deception.** Defendants' owing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representation and omission.

128. **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' conduct to prevent ongoing and future harm that will result.

129. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

///

///

///

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**COUNT SIX**

**Intentional Misrepresentation**

**(*On Behalf of the Nationwide Class and California Subclass*)**

130. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

131. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

132. Defendants have intentionally labeled and marketed the Products with the No Artificial Flavors Representations. However, the Products contain citric acid. Defendants have misrepresented the quality of ingredients contained in the Products.

133. Defendants' misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quality of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or his purchase decision.

134. At all relevant times when such misrepresentations were made, Defendants knew or should have known that the representations were misleading.

135. Defendants intended for Plaintiff and the Class to rely on the front labeling and marketing of the Products', as evidenced by Defendants' intentional manufacturing, marketing, labeling, and selling of Products with artificial flavoring ingredients.

136. Plaintiff and members of the Class reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices.

137. As a direct and proximate result of Defendants' intentional misrepresentations, Plaintiff and members of the Class have suffered injury in fact.

///

///

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**COUNT SEVEN**

**Negligent Misrepresentation**

**(*On Behalf of the Nationwide Class and California Subclass*)**

138. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

139. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

140. Defendants have negligently labeled and marketed the Products with the No Artificial Flavors Representations. However, the Products contain citric acid. Defendants have misrepresented the quality of ingredients contained in the Products.

141. Defendants' misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quality of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or his purchase decision.

142. At all relevant times when such misrepresentations were made, Defendants knew or should have known that the representations were misleading.

143. Defendants intended for Plaintiff and the Class to rely on the front labeling and marketing of the Products', as evidenced by Defendants' intentional manufacturing, marketing, labeling, and selling of Products artificial flavors.

144. Plaintiff and members of the Class reasonably and justifiably relied on Defendants' intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices.

145. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff and members of the Class have suffered injury in fact.

///

///

## PRAYER FOR RELIEF

146. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel, consistent with applicable law;

b. **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendants to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendants immediately cease and desists from selling the unlawful Products in violation of law; that enjoin Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and/or that require Defendants to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

Malk & Pogo Law Group, LLP | 5320 Laurel Canyon Blvd, Valley Village, CA 91607

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

DATED: May 14, 2026 **MALK & POGO LAW GROUP, LLP**

*/s/ Valter Malkhasyan*
Valter Malkhasyan, Esq.
Erik Pogosyan, Esq.

*Counsel for Plaintiff and the Proposed Class*

Filed
May 26, 2026
Clerk of the Court
Superior Court of CA
County of Santa Clara
26CV493594
By: fbryant

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
**191 N. FIRST STREET**
**SAN JOSE, CA 95113-1090**

TO: FILE COPY

RE: **Alex Kononenko vs PepsiCo, Inc. et al**
CASE NUMBER: **26CV493594**

# ORDER DEEMING CASE COMPLEX AND STAYING DISCOVERY AND RESPONSIVE PLEADING DEADLINE

WHEREAS, the Complaint was filed by **Alex Kononenko** ("Plaintiff") in the Superior Court of California, County of Santa Clara, on **05/14/2026** and assigned to **Department 19** (Complex Civil Litigation), the **Honorable Theodore C Zayner** presiding, pending a ruling on the complexity issue;

IT IS HEREBY ORDERED that:

The Court determines that the above-referenced case is complex within the meaning of California Rules of Court 3.400. The matter remains assigned, for all purposes, including discovery and trial, to **Department 19** (Complex Civil Litigation), the **Honorable Theodore C Zayner** presiding.

The parties are directed to the Court's local rules and guidelines regarding electronic filing and to the Complex Civil Guidelines, which are available on the Court's website.

Pursuant to California Rules of Court, Rule 3.254, the creation and maintenance of the Master Service List shall be under the auspices of (1) Plaintiff **Alex Kononenko** as the first-named party in the Complaint, and (2) the first-named party in each Cross-Complaint, if any.

Pursuant to Government Code section 70616(b), each party's complex case fee is due within ten (10) calendar days of this date.

Plaintiff shall serve a copy of this Order on all parties forthwith and file a proof of service within seven (7) days of service.

Any party objecting to the complex designation must file an objection and proof of service within ten (10) days of service of this Order. Any response to the objection must be filed within seven (7) days of service of the objection. The Court will make its ruling on the submitted pleadings.

The Case Management Conference remains set for **09/09/2026** at 2:31 p.m. in **Department 11.**

Counsel for all parties are ordered to meet and confer in person or via video conference at least 15 days prior to the First Case Management Conference and discuss the following issues:

1. Issues related to recusal or disqualification;

-----

2. Issues of law that, if considered by the Court, may simplify or further resolution of the case, including issues regarding choice of law;
3. Appropriate alternative dispute resolution (ADR), for example, mediation, mandatory settlement conference, arbitration, mini-trial;
4. A plan for preservation of evidence and a uniform system for identification of documents throughout the course of this litigation;
5. A plan for document disclosure/production and additional discovery; which will generally be conducted under court supervision and by court order;
6. Whether it is advisable to address discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case (counsel should consider whether they will stipulated to limited merits discovery in advance of certification proceedings), allowing the option to complete discovery if ADR efforts are unsuccessful;
7. Any issues involving the protection of evidence and confidentiality;
8. The handling of any potential publicity issues;

Counsel for Plaintiff is to take the lead in preparing a Joint Case Management Conference Statement to be filed 5 calendar days prior to the First Case Management Conference, and include the following:

1. a brief objective summary of the case;
2. a summary of any orders from prior case management conferences and the progress of the parties' compliance with said orders;
3. significant procedural and practical problems that may likely be encountered;
4. suggestions for efficient management, including a proposed timeline of key events; and
5. any other special consideration to assist the court in determining an effective case management plan.

To the extent the parties are unable to agree on the matters to be addressed in the Joint Case Management Conference Statement, the positions of each party or of various parties should be set forth separately and attached to this report as addenda. The parties are encouraged to propose, either jointly or separately, any approaches to case management they believe will promote the fair and efficient handling of this case. The Court is particularly interested in identifying potentially dispositive or significant threshold issues the early resolution of which may assist in moving the case toward effective ADR and/or a final disposition.

**STAY ON DISCOVERY AND RESPONSIVE PLEADING DEADLINE** Pending further order of this Court, the service of discovery and the obligation to respond to any outstanding discovery is stayed. However, Defendant(s) shall file a Notice of Appearance for purposes of identification of counsel and preparation of a service list. The filing of such a Notice of Appearance shall be without prejudice to the later filing of a motion to quash to contest jurisdiction. Parties shall not file or serve responsive pleadings, including answers to the complaint, motions to strike, demurrers, motions for change of venue and cross-complaints until a date is set at the First Case Management Conference for such filings and hearings.

This Order is issued to assist the Court and the parties in the management of this "Complex" case through the development of an orderly schedule for briefing and hearings. This Order shall not preclude the

parties from continuing to informally exchange documents that may assist in their initial evaluation of the issues presented in this Case.

Plaintiff shall serve a copy of this Order on all the parties in this matter forthwith.

SO ORDERED.

Date: May 15, 2026

Hon. **Theodore C Zayner**
Judge of the Superior Court

---

If you, a party represented by you, or a witness to be called on behalf of that party need an accommodation under the American with Disabilities Act, please contact the Court Administrator's office at (408) 882-2700, or use the Court's TDD line, (408) 882-2690 or the Voice/TDD California Relay Service, (800) 735-2922.

POS-015

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 348491
NAME: Valter Malkhasyan (348491) | Erik Pogosyan (345650)
FIRM NAME: MALK & POGO LAW GROUP, LLP
STREET ADDRESS: 5320 Laurel Canyon Blvd
CITY: Valley Village STATE: CA ZIP CODE: 91607
TELEPHONE NO.: (818) 484-5204 FAX NO.: (818) 824-5144
E-MAIL ADDRESS: valter@malkpogolaw.com
ATTORNEY FOR (*Name*): Plaintiff Alex Kononenko and the Proposed Class

*FOR COURT USE ONLY*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, 95113
BRANCH NAME: Downtown Superior Court

Plaintiff/Petitioner: Alex Kononenko
Defendant/Respondent: PepsiCo, Inc. et al.

## NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL

CASE NUMBER: 26CV493594

TO *(insert name of party being served)*: PepsiCo, Inc. et al.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: May 20, 2026

Valter Malkhasyan
(TYPE OR PRINT NAME)

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of ***(to be completed by sender before mailing):***

1. [x] A copy of the summons and of the complaint.
2. [x] Other *(specify)*:

Civil Case Cover Sheet

***(To be completed by recipient):***

Date this form is signed: 06/04/2026

Natalie Sanders
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)